## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WALTER SARRAT AND HILDA SARRAT**                        **CIVIL ACTION**

**VERSUS**                                               **NO:  14-1017**

**UNIVAR U.S.A., INC.**                                  **SECTION: "S" (2)**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Univar USA Inc.'s Motion to Dismiss Paragraphs 54-59 of the Complaint as they relate to a claim for fraud (Doc. #5) is **DENIED.**

### BACKGROUND

This matter is before the court on a motion to dismiss plaintiffs' fraud allegations filed by defendant, Univar USA Inc.  Univar argues that the fraud allegations found in paragraphs 54 through 59 of the complaint must be dismissed because plaintiffs, Walter and Hilda Sarrat, failed to plead fraud with particularity as is required by Rule 9(b) of the Federal Rules of Civil Procedure.

Plaintiffs allege that from 1967 through 1969, Walter was employed by Gencote, Inc. as a polyurethane applicator, and that the work involved using toluene, which contains up to 2.5% benzene.  They allege that the toluene was sprayed in a "very fine breathable mist" directly onto Walter's skin and clothing, and that he was unaware that toluene contained benzene, which causes cancer, because he was "advised that toluene was safe and posed no hazard to his health in the manner it was being used."  Plaintiffs allege that Gencote purchased the toluene from ChemCentral, Inc. a/k/a Southern Solvent & Chemicals Corporation, which merged into Univar.

Plaintiffs allege that Walter developed Chronic Lymphocytic Leukemia as a result of his exposure to benzene in the toluene provided by Univar's predecessor.  Plaintiffs claim that there were no warning labels on the chemicals, and that the supplier knew or should have known of the

health hazards their product posed.  Plaintiffs allege that Univar is liable under theories of negligence, strict product liability, and "concealment, misrepresentation, fraud."  Univar has moved to dismiss plaintiffs' fraud allegations, arguing that they are not pleaded with sufficient particularity.

## ANALYSIS

**A.      Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).  A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127 S.Ct. at 1965.  The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008).  However, the court need not accept legal conclusions couched as factual allegations as true. Iqbal, 129 S.Ct. at 1949-50.  In considering a motion to dismiss for failure to state a claim, a district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).

**B.    Rule 9(b) of the Federal Rules of Civil Procedure**

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).   "[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b)." Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338-39 (5th Cir. 2008).   "A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." Flaherty & Crumrine Preferred Income Fund, Inc., 565 F.3d 200, 206 (5th Cir. 2009).   "Rule 9(b) states that 'in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" Id. at 206-07.   "Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after Twombly must make relief plausible, not merely conceivable, when taken as true." U.S. *ex rel* Grubbs v. Kanneganti, 565 F.3d 180, 186 (5th Cir. 2009).   "The frequently stated, judicially-created standard for a sufficient fraud complaint . . . instructs a plaintiff to plead the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." Id. (internal quotation and citation omitted).

Under Louisiana law, the elements of a claim for fraud or intentional misrepresentation are: (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury. Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc., 527 F.3d 412, 418 (5th Cir. 2008). "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006) (quotation omitted).

3

Plaintiffs' complaint includes the following allegations regarding fraud:

## CONCEALMENT, MISREPRESENTATION, FRAUD

54.

The Defendant was aware of the dangerous condition presented by exposure to benzene, and that Mr. Sarrat would suffer from diseases and other ill health effects as a result of these exposures. Defendant failed and/or willfully withheld knowledge of the health dangers from exposure to benzene.

55.

Under Louisiana law fraud may be either active or passive. Passive fraud may arise from a defendant's silence or failure to act. To state a claim for passive fraud, Louisiana courts generally require a showing of the following elements: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding then information. *See Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F.Supp. 587, 598 (E.D. La.1993). In support of their fraud claims against the Defendants, the plaintiffs would respectfully show as follows:

56.

**Univar** knew or should have known information on the hazardous nature of benzene, including a publication from the U.S. government agency for public health: *"The Toxicity and Potential Danger of Aliphatic and Aromatic Hydrocarbons",* W.F. Von Oettingen, Division of Industrial Hygiene, National Institute of Health, U.S. Public Health Service, 1942.

57.

Prior to 1967, **Univar** knew or should have known that benzene exposure had numerous adverse effects on human health including:

A. Death could be cause by short term exposure of 20,000 ppm;

4

B.   Chronic benzene poisoning could occur from repeated absorption of small doses of benzene over a period of days, weeks or months;

C.   Death could be caused from chronic exposures to benzene as a result of its effects on the blood;

D.   Chronic benzene exposure could cause damage to the nervous system, the gastrointestinal tract, to the liver, kidneys, cause hemorrhages from the skin and mucous membrane, and cause changes in the blood;

E.   Benzene exposure could cause changes in the blood including anemia, leukocytosis, lymphocytosis and leukopenia, and thrombopenia;

F.   The effect of benzene on the blood is as a result of benzene causing an injurious effect on the bone-marrow another myeloid structures;

G.   Benzene exposed workers should undergo periodic medical monitoring, particularly of changes in the blood;

H.   Chronic benzene poisoning leads to injury of the bone-marrow;

I.   Chronic Benzene exposure results from repeated or continuous exposure to relatively low concentration of benzene exposure;

J.   The toxic action of chronic exposure is mainly exerted on the hematopoietic system (blood forming tissues);

K.   It could take months or even years for symptoms of benzene exposure to manifest;

L.   Possible effects on the blood are leukopenia (decrease in white blood cells), neutropenia, severe anemia, thrombopenia (drop in platelet count);

M.   Individual reactions to chronic benzene poisoning vary as to their effects on the blood – it may cause a decreases in red-cells, white-cells, platelet, any

5

combination of these, a reduction or increase in cells in the bone marrow, or leukemia.

58.

In spite of this knowledge, Univar failed to provide any health warning on their drums of Toluene between 1967 and 1969. Additionally, Univar failed to disclose its Toluene contained benzene, that exposure to benzene was hazardous, or to provide any information concerning recommended protective equipment.

59.

As manufacturer, sellers and distributors of the product, Univar had a duty to inform users of the hazards associated with use of the product.

The allegations comply with Rule 9(b), because they do allege the elements of fraud with specificity. There is an allegation that Univar's predecessor had a duty to provide safety information to users, that it knew of the dangers related to the product and willfully withheld that information. Therefore, Univar's motion to dismiss is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Univar USA Inc.'s Motion to Dismiss Paragraphs 54-59 of the Complaint as they relate to a claim for fraud (Doc. #5) is **DENIED.**

New Orleans, Louisiana, this  17th  day of July, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**